**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| E-POCH PROPERTIES, | ) | CASE NO: 1:05-cv-01669 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| vs. | ) | NANCY A. VECCHIARELLI |
| | ) | |
| TRW AUTOMOTIVE U.S., | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OF OPINION** |

This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. (Doc. No. 14.) On October 6, 2006, Defendant TRW Automotive U.S. ("TRW") filed a Motion for Summary Judgment. (Doc. No. 48.) Plaintiff E-Poch Properties ("E-Poch") filed its Memorandum in Opposition on November 8, 2006. (Doc. No. 50.) TRW filed a Reply brief on November 20, 2006. (Doc. No. 51.) For the reasons set forth in detail below, TRW's Motion for Summary Judgment is GRANTED in part and DENIED in part.

**I. Procedural Background**

On November 12, 2003, E-Poch and TRW entered into a purchase agreement for the sale of real estate located in Cleveland, Ohio ("the property"). (Complaint at ¶3.) A large, single-story building is located on the property. Pursuant to the agreement, the purchase and sale of the property closed on January 20, 2005. (Compl. at ¶4; Answer at ¶3.)

E-Poch filed a Complaint alleging that TRW knowingly made false representations to induce E-Poch to enter into the agreement (Counts One and Two: Fraudulent Misrepresentation - Damages and Rescission of the Agreement); failed to exercise reasonable care in communicating the false representations to E-Poch (Counts Three and Four: Negligent Misrepresentation - Damages and Rescission of the Agreement); and breached the agreement due to the misrepresentations and failed to honor its obligations under the agreement (Counts Five and Six: Breach of Contract - Damages and Specific Performance).

On November 15, 2005, the Court granted in part and denied in part TRW's Motion to Dismiss. (Doc. No. 17.) Specifically, the Court found that E-Poch's fraudulent / negligent misrepresentation claim regarding TRW's alleged failure to disclose the condition of the roof survived. (Doc. No. 17.) On the other hand, the Court found that "E-Poch has not pled a valid breach of contract claim against TRW regarding the condition of the roof." (Doc. No. 17.) The Court also dismissed E-Poch's fraudulent /negligent misrepresentation claim regarding TRW's alleged failure to pay the utility charges and long-term air sampling and monitoring, because TRW owed no duty to E-Poch for these items in the absence of a contract. The Court did not make any ruling with respect to E-Poch's breach of contract claim with respect to utility bills and air-monitoring.

On September 26, 2006, E-Poch's Motion to Amend the Complaint was denied. (Doc. No. 45.) Therefore, at the time of TRW's filing of its motion for summary judgment, E-Poch's only remaining claims were for (1) fraudulent and negligent misrepresentation regarding TRW's alleged failure to disclose the condition of the roof; and (2) breach of contract with respect to utility costs and air-monitoring costs.

## II. Statement of Relevant Facts

E-Poch and TRW entered into an agreement for the purchase of real estate located in Cleveland, Ohio ("the property").  (Comp. at ¶3.)  TRW admits that a "true and accurate copy" of the purchase agreement is attached to E-Poch's Complaint.[1]  (Answer at ¶2.)

Under the heading "Warranties and Representations of Seller," TRW agreed that it had "no knowledge of any claims or violation regarding the current condition or use of the Property or any failure of any part thereof to be in compliance with any law, ordinance, statute, regulation or order of governmental authority or insurance underwriter."  (Compl., Ex. A at 5.)

Under the heading "Environmental" and sub-heading "Seller's Covenants," TRW agreed to "[c]omplete, at Seller's sole expense, the cleanup of the Property under Ohio's Voluntary Action Program ("VAP") ... and deliver to Buyer a No Further Action ("NFA") letter from a Certified Professional.  Seller agrees to apply for a Covenant Not to Sue ("CNS") from the State of Ohio."  (Compl., Ex. A at 13.)

In an Amendment to the Real Estate Purchase Agreement ("Amendment"), TRW agreed to "complete the following tasks at its sole expense: cleaning of oil and coolant residue from identified surfaces, restoration of restroom plumbing fixtures to operating condition, and repairs and replacements to floor damage...."  (Aff. of Jamie Melvin at E-P00030-E-P00038, Doc. No. 50, Ex. A.)

---

[1] TRW avers that E-Poch was not a party to the purchase agreement when it was executed, but was an assignee of HMS2 International, Inc.'s ("HMS2") interest in the agreement.  (Answer at ¶2.)  E-Poch admits that HMS2 originally purchased the property and further avers that HMS2 became E-Poch Properties, LLC.  (Memo. In Opp'n at 2, n.1.)  In its motion for summary judgment, however, TRW has made no argument that E-Poch is not a party to the contract.

E-Poch claims that TRW's representations in the agreement were false and not honored because: (1) prior to closing, TRW was aware that the property's roof was plagued by significant problems and defects, and had a potential to collapse; (2) TRW failed to pay the utility charges for the time period during which it performed the repair work; and (3) TRW failed to pay for certain long-term air sampling and monitoring, and did not deliver the NFA letter to E-Poch. (Compl. at ¶6.)

### III.  Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may rely on depositions, answers to interrogatories, and the like, to demonstrate that the non-moving party has no evidence to prove his case and hence that there can be no factual dispute.  *Id.* at 328 (White, J., concurring).  However, "it is not enough to move for summary judgment ... with a conclusory assertion that the [non-moving party] has no evidence to prove his case." *Id.*

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  That is, the nonmoving party

has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) *citing In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

In assessing the merits of the motion, a Court should "draw all reasonable inferences in favor of the nonmoving party." *Joostberns v. United Parcel Servs., Inc.*, 2006 U.S. App. LEXIS 533 at *8 (6th Cir. 2006). In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986).

### IV.  Analysis

**A.     Counts One through Four: Fraudulent and Negligent Misrepresentation.**

TRW asserts that it is entitled to summary judgment in its favor with respect to E-Poch's fraudulent misrepresentation and negligent misrepresentation claims. (Def.'s Memo. In Support at 3, Doc. No. 49.) Specifically, TRW argues that E-Poch's tort claims regarding the condition of the roof are barred by the doctrine of *caveat emptor*. *Id*.

"The doctrine of caveat emptor, although virtually abolished in the area of personal property, remains a viable rule of law in real estate sales." *Layman v. Binns*, 519 N.E.2d 642, 643, 35 Ohio St. 3d 176, 177 (Ohio 1988) *citing* 7 Williston, Contracts (Jaeger 3 Ed. 1963) 779, Section 926; Friedman, Contracts and Conveyances of Real Property (4 Ed. 1984) 37, Section 1.2(n). "The principle of caveat emptor applies to sales of real estate relative to conditions open to observation. Where those conditions are discoverable and the purchaser has the opportunity

5

for investigation and determination without concealment or hindrance by the vendor, the purchaser has no just cause for complaint even though there are misstatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud." *Id*. at 643 *quoting Traverse v. Long*, 135 N.E.2d 256, 165 Ohio St. 249, 252 (Ohio 1956).  In order for the doctrine of *caveat emptor* to operate fairly, courts have established the following conditions upon its application: "(1) the defect must be open to observation or discoverable on reasonable inspection, (2) the purchaser must have an unimpeded opportunity to examine the property and (3) the vendor may not engage in fraud." *Layman*, 519 N.E.2d at 644; *accord Cardi v. Gump*, 698 N.E.2d 1018, 1022, 121 Ohio App. 3d 16, 22 (Ohio Ct. App. 1997).  Thus, Ohio law is clear that *caveat emptor* will not apply where a defective condition is latent *or* where a seller has committed a fraud upon the buyer.

TRW believes that "it is beyond dispute that the condition of the roof was open to observation."  (Def.'s Memo. In Support at 7.)  However, genuine issues of material fact remain as to whether the condition of the roof was open to observation or discoverable upon reasonable inspection.  Bud Griffith, a roofing expert retained by E-Poch, has stated in a sworn affidavit that not all of the defective conditions of the roof were readily observable.  (Pl,'s Memo. In Opp'n, Ex.G at ¶4.)  Mr. Griffith also testified that "the true deteriorated condition of the roof was neither open nor obvious." *Id*.  Furthermore, Mr. Griffith stated that "[i]n order to determine the true nature and extent of the deteriorated roof conditions, it is necessary to do some destructive testing and analysis ... and to tear off the roof to determine how much rotted decking needs to be

6

replaced."[2] *Id.* Based on this testimony, a reasonable jury could find that the condition of the roof was not open to observation or discoverable upon reasonable inspection. Such a finding would preclude the application of the doctrine of *caveat emptor*. TRW argues that E-Poch was on notice because some of the defects in the roof were readily observable. (Def.'s Reply at 3.) It is not the Court's function at the summary judgment stage to resolve factual disputes or to weigh the evidence. A factual dispute exists as to whether the condition of the roof was either open to observation or discoverable upon reasonable inspection. Therefore, TRW's motion for summary judgment on E-Poch's fraudulent and negligent misrepresentation claims is denied.

In addition, even if the condition of the roof was open to observation or discoverable upon reasonable inspection, TRW's motion would still be denied. The application of the doctrine of *caveat emptor* is also barred where the seller engages in fraud. *See, e.g., Layman*, 519 N.E.2d at 644. In this case, as discussed below, there is a genuine issue of material fact as to whether TRW engaged in fraud.

An action for fraudulent misrepresentation requires proof of (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *See Brewer v. Brothers*, 611 N.E.2d 492, 495, 82 Ohio App. 3d 148, 153 (Ohio Ct. App. 1992) *citing Burr v.*

---

[2] The purchase agreement allowed E-Poch to conduct inspections and testing of the property provided that "such inspections and testing shall not cause material damage to the Property." (Compl., Ex. A at 7.)

7

*Stark Cty. Bd. of Comm'rs.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101, 1105 (Ohio 1986); *Noble v. Mandalin*, 660 N.E.2d 1231, 1234, 104 Ohio App. 3d 11, 14 (Ohio Ct. App. 1995); *Weiker v. A.A. Green Realty*, 2006 Ohio App. LEXIS 1704, 2006-Ohio-1860, ¶38 (Ohio Ct. App. 2006); *Barker v. Stoner*, 650 N.E.2d 1372, 1374, 70 Ohio Misc. 2d 42, 46 (Ohio Misc. 1994); *Cardi v. Gump*, 698 N.E.2d at 1022.

Viewed in the light most favorable to E-Poch as the non-moving party, E-Poch has pointed to the following evidence of record sufficient to create a genuine issue of material fact as to whether TRW engaged in fraud.

Thomas Bozich, an employee of TRW who was responsible for supervising the maintenance and repair of the roof at the facility, stated that TRW told buyers that the areas of the roof that had not already been re-roofed required only routine maintenance and repair. (Depo. of Bozich at 75.) Jamie Melvin, the principle of E-Poch, testified that Mr. Bozich, in response to his questions, testified that the roof was in overall good condition with only minor leaks. (Depo. of Melvin at 131-132, 170.) He explained that Mr. Bozich told him a new roof had been erected over one third of the building and that the remainder only required maintenance. (Aff. of Melvin at ¶6, attached to Pl.'s Memo. In Opp'n as Ex. A.)[3] However, a report from Roberts Roofing dated April 9, 2000, an independent contractor engaged by TRW, stated that areas C-8 through C-10 of the roof "is leaking badly and has an area of deck collapse in progress." (Depo. of Bozich, Ex. 24.) The report warned TRW to keep personnel out of these areas. *Id*. Areas designated G and K were also reported to be "completely saturated" and

---

[3] Although Mr. Bozich denies ever telling a prospective buyer that the roof was in good condition, it is not the Court's function at the summary judgment stage to resolve conflicting testimony. (Aff. of Bozich at ¶8, Doc. No. 49-5.)

deteriorating faster than anticipated. *Id*. E-Poch asserts that only area D of the roof was replaced, a contention unchallenged in the TRW's Reply. (Pl.'s Br. at 5.)

Further acts of concealment are also set forth by a former employee of TRW, Tim Seale, who has testified by way of affidavit to the following: Mr. Bozich instructed him to vacuum up puddles that formed on the floor after water leaked from the roof; TRW required a 24-hour advance notice before prospective purchasers could see the building to allow him to vacuum up the water; Mr. Bozich instructed him not to speak to any prospective purchasers regarding the condition of the roof; and Mr. Bozich occasionally sent him away from the building when prospective buyers were on the premises to prevent him from engaging in conversation with the buyers. (Aff. of Seale at ¶¶1-9, attached to Pl.'s Memo. In Opp'n as Ex. E.) Mr. Seale's testimony is corroborated by Bonnie Pfeiffer, a security guard who worked at the building. (Aff. of Pfeiffer at ¶19, attached to Pl.'s Memo. In Opp'n as Ex. F.) Ms. Pfeiffer also testified that Mr. Bozich told her not to say anything to potential buyers about the leaks in the roof and to inform other security guards to also refrain from saying anything. (Aff. of Pfeiffer at ¶¶17-18.)

Viewed in the light most favorable to E-Poch as the non-moving party, a reasonable fact finder could conclude that Mr. Bozich's alleged statements that the roof was in good condition is false, misleading and material to the transaction and that Mr. Bozich engaged in a pattern of concealment. TRW also argues that even if false statements were made, E-Poch's retention of a roof inspector rendered its reliance on Mr. Bozich's statements unjustifiable. As there are factual disputes over what information the inspection revealed and disputes as to whether the condition was latent, the issue of whether E-Poch's reliance was justifiable is an issue for the jury. Because a genuine issue of material fact remains whether TRW engaged in fraud, the

9

doctrine of *caveat emptor* cannot be applied as a basis for summary judgment.

For the foregoing reasons, factual disputes remain as to whether the alleged defects of the roof were open to observation or discoverable on reasonable inspection and whether TRW engaged in fraud.  Under Ohio law, *caveat emptor* cannot be applied if these circumstances exist.  As TRW's argument for summary judgment with respect to E-Poch's tort claims is solely based on the application of the doctrine of *caveat emptor*, TRW's motion for summary judgment on these claims is denied.

**B.     Counts Five and Six: Breach of Contract.**

In light of the Court's prior rulings, E-Poch's only remaining breach of contract claims concern TRW's alleged contractual liability for utility bills and air-monitoring costs stemming from TRW's covenants under the "Environmental" heading of the purchase agreement.

**1.     Air Monitoring.**

TRW argues that E-Poch alleges it will incur costs under the Environmental Covenant and Operation & Management entered into with the Ohio EPA.  (Def.'s Memo. In Support at 12.)  TRW claims that E-Poch has not incurred any costs to this point and that E-Poch has admitted as much.  *Id*. at 13.  TRW has moved for summary judgment on the grounds that: (1) TRW did not obligate itself to bear these costs under the purchase agreement; or (2) E-Poch's claim is not ripe as no breach has occurred.  *Id*. at 12-14.

E-Poch's belief that TRW is obligated to pay air-monitoring costs stems from the following provision of the parties' purchase agreement:

> Complete, at Seller's sole expense, the cleanup of the Property under Ohio's Voluntary Action Program ("VAP") as set forth in Ohio Admin. Code 3745-300) and No Further Action ("NFA") letter from a <u>Certified Professional</u>.  Seller agrees to apply for a Covenant Not to Sue ("CNS") from the State of Ohio.  Buyer

10

> recognizes that some work necessary to obtain the NFA and apply for the CNS will occur after Closing. (Compl., Ex. A §23.)

TRW emphasizes that the contract only requires it to "apply" for a CNS and not to *obtain* a CNS. In its brief, E-Poch avers that TRW substantially complied with the environmental covenants of the purchase agreement and that the State of Ohio granted E-Poch a CNS. (Pl.'s Memo. In Opp'n at 10.) However, E-Poch states that the air-monitoring requirements are part and parcel of the VAP and the CNS application procedure. *Id*.

Where a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations. *See, e.g., Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (Ohio 1978). The portion of the purchase agreement quoted above is clear and unambiguous. The contract only requires TRW to apply for a CNS, which E-Poch admits was granted. Mr. Melvin's also testified that TRW installed a ventilation system as part of the VAP program. (Depo. of Melvin at 48-50.) Based on this evidence, the costs associated with air-monitoring cannot reasonably be construed as falling within TRW's obligation to clean-up the property pursuant to the VAP or to apply for a CNS. Air-monitoring does not fall into the category of "cleaning," and there is no evidence that TRW failed to apply for a CNS. Rather the air-monitoring appears to be a condition imposed by the Ohio EPA to ensure continued compliance with Ohio EPA standards. E-Poch has not cited any provision of the purchase agreement or Amendment wherein TRW warrants that the property will comply with Ohio EPA standards or wherein TRW assumed responsibility for paying the expense of continued air-monitoring.

For the foregoing reasons, TRW's motion for summary judgment with respect to E-Poch's breach of contract claim for air-monitoring costs is granted.

11

**2.      Utility Bills.**

TRW seeks summary judgment on E-Poch's claim for utility bills.  TRW argues that the responsibility for the utility bills passed to E-Poch after January 20, 2005 pursuant to the terms of the purchase agreement.[4]  (Def.'s Memo. In Support at 16.)  With respect to utilities, the terms of the purchase agreement merely state that such charges shall be prorated per the most current meter readings and adjusted by the parties.  (Compl., Ex. A at 2-3.)  The Amendment to the purchase agreement states that TRW, as the seller, shall complete certain clean-up, restoration, and repair work at "its sole expense." (Aff. of Melvin at E-P00030-E-P00038.)

Although E-Poch believes this latter provision "clearly obligates TRW to pay for [all] utility charges incurred while it was in the Building fulfilling its repair obligations," the Court does not agree.  (Pl.'s Memo. In Opp'n at 18.)  The plain language of the agreement is not reasonably susceptible to an interpretation that ALL utility costs were to be born by TRW, nor does the Amendment unequivocally address which party is responsible for utility costs directly resulting from TRW's clean-up, restoration, and repair activity.  Whether TRW's contractual obligation to perform certain activities on the property at it sole expense include paying the utility charges stemming from those activities is ambiguous.  However, E-Poch's assertion that TRW, by agreeing to perform certain on-site activities at its sole expense, thereby also obligated itself to pay for utility charges *unrelated* to the clean-up, restoration, and repair work is a patently untenable interpretation of the contract.

---

[4] There is no dispute that TRW performed certain clean-up work on the property *after* the close of the sale pursuant to the terms of the purchase agreement.

12

The question of whether TRW is contractually obligated to pay for utility charges *incurred as a result of* the clean-up, restoration, and repair work is less clear.  The plain language of contract does not expressly allocate responsibility for these repair and clean-up related utility charges to TRW.  Nevertheless, E-Poch's interpretation that TRW's obligation to perform work on the property "at its sole expense" is not unreasonable to the extent it *only* seeks recovery of utility costs *related* to the clean-up, restoration, and repair work.  Neither party has suggested that the contract is one of adhesion; therefore, neither party is entitled to have the agreement strictly construed against the drafter.  E-Poch has presented parol evidence that Mr. Melvin discussed the issue of utility responsibility with the real estate agents and that it was understood or agreed that TRW would cover these utility costs.  (Depo. of Melvin at 86-89; Aff. of Melvin at ¶11.)

Where a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations.  *See, e.g., Alexander*, 374 N.E.2d 146; *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 1998-Ohio-186, 697 N.E.2d 208 (Ohio 1998).  However, where a contract or provision thereof is ambiguous, its interpretation involves both factual and legal questions.  *See, e.g., Four Star Serv. v. City of Akron*, 1999 Ohio App. LEXIS 5004 at *10 (Ohio Ct. App. 1999).  "Where that ambiguity is coupled with a material issue of fact supported by proper evidentiary materials, summary judgment is improper." *Watkins v. Williams*, 2004 Ohio App. LEXIS 6640, 2004-Ohio-7171, ¶23 (Ohio Ct. App. 2004) *citing Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 323-24, 474 N.E.2d 271, 273 (Ohio 1984).

Due to the ambiguity of the purchase agreement and the Amendment with respect to utility costs related to the clean-up, restoration, and repair performed by TRW, the Court is presented with a question of mixed law and fact that is not amenable to resolution at the summary judgment stage. TRW has not demonstrated the absence of genuine issues of material fact and is not entitled to summary judgment based on the four corners of the contract. The Court cannot determine, as a matter of law, whether utility charges related to the repair, restoration and clean-up activities are recoverable under the contract.

In the alternative, TRW argues that even if E-Poch has a valid breach of contract claim for utility costs, it is, nonetheless, entitled to summary judgment. TRW's argument is based on its assertion that the utility bills did not result from TRW's work on the property and that E-Poch cannot demonstrate any damages stemming from the alleged breach with reasonably certainty.[5] *See AGF, Inc. v. Great Lakes Heat Treating Co.*, 51 Ohio St. 3d 177, 183, 555 N.E.2d 634, 640 (Ohio 1990) (to recover lost future profits stemming from a breach of contract, a new business must demonstrate their existence with "reasonable certainty," but evidence of lost future profits need only be reasonable, not specific.) TRW's reliance on *AGF, Inc.* is misplaced as the case is clearly distinguishable. Therein, the Ohio Supreme Court addressed the circumstances under which lost future profits by a new business may be recovered for breach of contract. *Id*. As Ohio courts have explained, the reasonably certainty requirement for lost profits is imposed to prevent recovery of damages that are "speculative, possible or imaginary" and that "[e]vidence

---

[5] TRW argues that Mr. Melvin of E-Poch has admitted that heating costs would have been incurred even if TRW's personnel had not been present at the property, as certain minimum temperatures had to be maintained in the building to keep the plumbing pipes from freezing.

14

of lost profits from a new business venture receive greater scrutiny because there is no track record upon which to base an estimate." *Telxon Corp. v. Smart Media of Del., Inc.*, 2005 Ohio App. LEXIS 4475, 2005 Ohio 4931, ¶108 (Ohio Ct. App. 2005), *citing McNulty v. Pls Acquisition Corp.*, 2002-Ohio-7220 at ¶87, n. 14 (Ohio Ct. App. 2002).

E-Poch is seeking the recovery of damages that are tangible costs already incurred. Such damages are not inherently speculative or akin to future damages that may or may not occur. While E-Poch ultimately may be unable to reasonably apportion the utility bills between TRW and itself, this Court cannot dismiss the claim based upon a challenge to the damages at this stage of the proceedings on the record in this case. TRW has not demonstrated that it is entitled to judgment on damages as a matter of law. Furthermore, TRW has pointed to no other applicable law or statute that justifies a grant of summary judgment under these circumstances.

For the foregoing reasons, TRW's motion for summary judgment with respect to E-Poch's claim for breach of contract for recovery of utility costs is granted in part and denied in part. E-Poch has not set forth sufficient facts to maintain a breach of contract claim to recover ALL utility costs incurred during the time TRW performed clean-up and repair work on the property. However, TRW's motion is denied to the extent it seeks summary judgment on E-Poch's claim for utility costs incurred as a result of TRW's activity on the property.

### V. Conclusion

For the foregoing reasons, TRW's Motion for Summary Judgment is GRANTED in part and DENIED in part. Specifically, E-Poch's fraudulent and negligent misrepresentation claims contained in Counts One through Four regarding TRW's alleged failure to disclose the condition of the roof survive, as does E-Poch's breach of contract claim alleging TRW failed to pay the

utility charges incurred only as a result of TRW's clean-up, repair, and restoration activities. However, at trial, E-Poch will have to establish a reasonable apportionment of the utility bills to support its claim for damages on this issue.  TRW's motion for summary judgment with respect to E-Poch's breach of contract claim with respect to air-monitoring costs is granted.

IT IS SO ORDERED.

s/ *Nancy A. Vecchiarelli*
NANCY A. VECCHIARELLI
U.S. MAGISTRATE JUDGE

Date: December 12, 2006.