**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| E-POCH PROPERTIES, | ) | CASE NO: 1:05-cv-01669 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| vs. | ) | NANCY A. VECCHIARELLI |
| | ) | |
| TRW AUTOMOTIVE U.S., | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OF OPINION** |

This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. (Doc. No. 14.) Previously, the Court granted in part and denied in part Defendant TRW Automotive U.S.'s ("TRW") Motion for Summary Judgment. (Doc. No. 52.) Defendant TRW filed a Motion for Partial Reconsideration of the Court's summary judgment ruling. (Doc. No. 53.) Plaintiff E-Poch Properties ("E-Poch") filed a Memorandum in Opposition to TRW's motion for reconsideration. (Doc. No. 61.) For the reasons set forth in detail below, TRW's Motion for Partial Reconsideration is GRANTED and summary judgment is entered in Defendant's favor on Plaintiff E-Poch's claims for fraudulent and negligent misrepresentation.

## I. Procedural Background[1]

In its December 13, 2006 opinion, the Court made the following finding with regard to the claims of fraudulent and negligent misrepresentation:

> [F]actual disputes remain as to whether the alleged defects of the roof were open to observation or discoverable on reasonable inspection and whether TRW engaged in fraud. Under Ohio law, *caveat emptor* cannot be applied if these circumstances exist. As TRW's argument for summary judgment with respect to E-Poch's tort claims is solely based on the application of the doctrine of *caveat emptor*, TRW's motion for summary judgment on [E-Poch's fraudulent and negligent misrepresentation] claims is denied.

(Doc. No. 52 at 10.)  The Court, however, granted TRW's motion for summary judgment with respect to E-Poch's breach of contract claim for recovery of air-monitoring costs.  The Court also granted in part and denied in part TRW's motion for summary judgment with respect to E-Poch's claim for breach of contract for recovery of utility costs.[2]

In its motion for partial reconsideration, Defendant TRW asks the Court to reconsider its denial of summary judgment only with respect to E-Poch's claims for fraudulent and negligent misrepresentation contained in Counts One through Four of the Complaint.  (Doc. No. 53 at 1.) E-Poch's claims are based on alleged misrepresentations and/or concealment by Defendant TRW's building manager, Thomas Bozich, concerning the roof of the purchased property prior to the transaction.

---

[1]  For earlier procedural background and a discussion of the relevant facts, the reader is referred to the Court's prior ruling on Defendant TRW's motion for summary judgment. (Doc. No. 52 at 1-3.)

[2]  The Court found that "E-Poch has not set forth sufficient facts to maintain a breach of contract claim to recover ALL utility costs incurred during the time TRW performed clean-up and repair work on the property.  However, TRW's motion is denied to the extent it seeks summary judgment on E-Poch's claim for utility costs incurred as a result of TRW's activity on the property." (Doc. No. 52.)

## II.  Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may rely on depositions, answers to interrogatories, and the like, to demonstrate that the non-moving party has no evidence to prove his case and hence that there can be no factual dispute. *Id.* at 328 (White, J., concurring). However, "it is not enough to move for summary judgment ... with a conclusory assertion that the [non-moving party] has no evidence to prove his case." *Id.*

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995). That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) *citing In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

In assessing the merits of the motion, a Court should "draw all reasonable inferences in favor of the nonmoving party." *Joostberns v. United Parcel Servs., Inc.*, 2006 U.S. App. LEXIS 533 at *8 (6th Cir. 2006). In addition, the Court "does not weigh the evidence or make credibility

3

determinations." *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986).

### III.  Analysis

**A.     Propriety of Defendant TRW's Motion for Partial Reconsideration.**

Plaintiff E-Poch argues that Defendant TRW's motion for reconsideration is improper under Fed. R. Civ. P. 59(e) ("Rule 59(e)"), which governs motions to amend or alter a judgment. E-Poch avers that a Rule 59(e) motion should only be considered when it is premised on a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.  However, E-Poch's argument is not well-taken.  "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991), *citing Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47-48 (1943).  "A district court may modify, or even rescind, such interlocutory orders." *Id.*, *citing Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88, 66 L. Ed. 475, 42 S. Ct. 196 (1922); *accord Leelanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 Fed. Appx. 942, 945, 2004 U.S. App. LEXIS 27207 (6th Cir. 2004).  "An order denying summary judgment is not ordinarily a final, appealable decision." *Chesher v. Neyer*, 2007 U.S. App. LEXIS 3468 (6th Cir. 2007).  Because the Court's order denying summary judgment is interlocutory, Rule 59(e) does not apply and it is within this Court's power and discretion to reconsider its earlier ruling.

**B.      Counts One through Four: Fraudulent and Negligent Misrepresentation.**

In addressing Defendant TRW's motion for reconsideration, the Court has thoroughly reviewed the available evidence.[3] Defendant TRW's motion for partial reconsideration is based on its position that: (1) the existence, if not the total extent, of the defects in the roof were readily observable and (2) E-Poch's roofing inspector was given access to, and actually reviewed, material that E-Poch alleges was withheld. The significance of these positions advocated by TRW is their impact on TRW's underlying argument that it is entitled to judgment in its favor based on the doctrine of *caveat emptor*.

"The doctrine of caveat emptor, although virtually abolished in the area of personal property, remains a viable rule of law in real estate sales." *Layman v. Binns*, 519 N.E.2d 642, 643, 35 Ohio St. 3d 176, 177 (Ohio 1988) *citing* 7 Williston, Contracts (Jaeger 3 Ed. 1963) 779, Section 926; Friedman, Contracts and Conveyances of Real Property (4 Ed. 1984) 37, Section 1.2(n). "The principle of caveat emptor applies to sales of real estate relative to conditions open to observation. Where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor, the purchaser has no just cause for complaint even though there are misstatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud." *Id*. at 643 *quoting Traverse v. Long*, 135 N.E.2d 256, 165 Ohio St. 249, 252 (Ohio 1956). In order for the doctrine of *caveat emptor* to operate fairly, courts have established the following conditions upon its application: "(1) the defect must be open to observation or discoverable on reasonable

---

[3] Specifically, the Court has reviewed the affidavits of record, the material portions of the depositions of Jamie Melvin, Bud Griffith and Thomas Bozich cited by the parties, and the entire deposition and report of Kurt Timmons.

inspection, (2) the purchaser must have an unimpeded opportunity to examine the property and (3) the vendor may not engage in fraud." *Layman*, 519 N.E.2d at 644; *accord Cardi v. Gump*, 698 N.E.2d 1018, 1022, 121 Ohio App. 3d 16, 22 (Ohio Ct. App. 1997). Thus, Ohio law is clear that *caveat emptor* will not apply where a defective condition is latent *or* where a seller has committed a fraud upon the buyer.

**1. Defect must be open to observation or discoverable on reasonable inspection**.

TRW argues that the first condition is satisfied because defects of the roof were open to observation or discoverable upon reasonable inspection. (Def.'s Memo. In Support at 7, Doc. No. 49.) E-Poch counters that the defects of the roof were not easily discoverable as evidenced by its expert's testimony that "the true deteriorated condition of the roof was neither open nor obvious," as destructive core testing is needed "to determine how much rotted decking needs to be replaced." (Pl.'s Memo. In Opp'n at 5, Doc. No. 61.) Upon careful reconsideration, the Court, for the reasons stated below, reverses its earlier ruling and finds that there is no genuine issue of material fact as to whether the condition of the roof was open to observation or discoverable upon reasonable inspection. Considering all the evidence in the light most favorable to the non-moving party, this Court concludes that the condition of the roof was neither latent nor undiscoverable upon reasonable inspection.

E-Poch, through its principal, Jamie Melvin ("Melvin"), admits that Technique Roofing Systems, Inc. ("Technique") "was engaged to perform, without compensation, a general visual observation of the roof, to discuss generally with Mr. Bozich the nature of TRW's roof maintenance and repair program and to discuss some cost estimates for future roof replacement and maintenance expenditures." (Aff. of Melvin at ¶10, attached to Pl.'s Memo. In Opp'n as Ex.

6

A.)

Technique's roof inspection was performed in December of 2003 by Kurt Timmons, manager and co-owner of Technique, and lasted four to five hours. (Timmons Depo. at 5, 15.) The roof of the property in question contained 25 to 30 independent different roof sections that span an approximate total of 850,000 square feet . (Timmons Depo. at 17.) Timmons stated the following. He "walked every single roof on that building." (Timmons Depo. at 11.) He was granted access to all areas of the roof, but there was one area he did not want to walk across because holes in the decking presented a danger. (Timmons Depo. at 13.) He could tell by walking on some areas of the roof that there was water damage beneath it, while other areas had evidence of leaks. (Timmons Depo. at 14, 37.) He observed roofs "that were fairly new, and we had roofs up there that should already have been replaced, and we had roofs ... that still had life in them, some that just needed repairs." (Timmons Depo. at 11-12.) Timmons's conclusions were based solely on his visual observations during his walk around the roof, as no testing was performed. (Timmons Depo. at 14, 51-55.)

Timmons was granted access to all of TRW's files containing its roofing records, including the reports of Roberts Roofing. (Timmons Depo. at 11, 16-17; Bozich Depo. at 108-109, 122-124.) Timmons, in fact, looked through the files, albeit briefly, as they confirmed what he saw firsthand. (Bozich Depo. at 109, 122.) Timmons explained that he was more interested in ascertaining whether TRW had a roof maintenance program in place than reading through the program, as he did not want to develop a preconception of the condition of the roof and preferred to base his opinion on his own observations. (Timmons Depo. at 17, 55.)

The December 2003 inspection resulted in a report by Timmons dated January 14, 2004

7

that was submitted to E-Poch and read by Melvin. (*See* Def.'s Memo. In Support, Exh. 2; Timmons Depo. at 8; Melvin Depo. at 101-102.) Melvin never spoke to anyone at Technique to discuss the findings set forth in the report. (Melvin Depo. at 101-102, 170.) The Technique report stated the following: the condition of the roof varied significantly, as some sections had 10-15 years of life remaining, some 5-7 years, some 3-5 years, some only 1-3 years, and some were due to be replaced immediately; about 50,000 square feet of the roof should be replaced each year at a cost of $150,000[4] annually; $35,000 to $40,000 would have to be spent annually on repair alone; and that prolonging replacement will increase replacement costs. (Def.'s Memo. In Support, Exh. 2.)

Timmons was able to ascertain through a visual inspection that some areas of the roof needed immediate replacement while others would need replacement very soon – within one to five years. "When a plaintiff claiming fraud in the sale of property has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed." *Nunez v. J.L. Sims Co.*, 2003 Ohio App. LEXIS 3075, 2003-Ohio-3386, ¶17 (Ohio Ct. App. 2003), *citing Eiland v. Coldwell Banker Hunter Realty*, 122 Ohio App. 3d 446, 459, 702 N.E.2d 116 (Ohio Ct. App. 1997); *accord Kramer v. Raterman*, 161 Ohio App.3d 363, 830 N.E.2d 416, 2005-Ohio-2742, ¶14 (Ohio Ct. App. 2005). While the Technique inspection disclosed that portions of the roof needed immediate replacement while other portions

---

[4] Though the report does not specifically state whether the expenditure of $150,000 was a one time cost or an annual cost, Timmons explains in his deposition that this was an annual expenditure and that the general contractor for whom he prepared the report would have known that based on the sheer size of the roof. (Timmons Depo. at 48, 58-59.) Moreover, the report clearly states that 50,000 square feet of roofing should be replaced *annually*.

8

required replacement within a very short span of time, it did not specify, either by square footage or percentage, how much of the roof fell into the various categories of remaining life.  Neither E-Poch's actual knowledge of the defect nor its decision to limit the inspector's duties is material to the issue of whether the defect was observable or reasonably discoverable.[5]  Further, the absence of adequate communication between Technique and E-Poch has no impact on whether the roof defects were observable or discoverable upon reasonable inspection.

In its prior opinion, the Court ascribed particular significance to the affidavit of Bud Griffith, a roofing expert retained by E-Poch, who stated that "while there were several readily observable defects in the roof, such as rusted out decking and cracked membranes, the true deteriorated condition of the roof was neither open nor obvious."  (Pl.'s Memo. In Opp'n, Ex. G at ¶4, Doc. No. 50.)  Griffith opined that "[i]n order to determine the *true nature and extent* of the deteriorated roof conditions, it is necessary to do some destructive testing and analysis ... and to tear off the roof to determine how much rotted decking needs to be replaced." *Id.*  This Court mistakenly viewed this testimony as creating a question of fact.  However, further scrutiny shows that Griffith's statement does not create a material factual dispute.  Griffith's statement

---

[5] E-Poch argues in its brief that Technique was not paid for the inspection, and was engaged merely to perform a general visual inspection and not a detailed inspection. (Aff. of Melvin at ¶10.)  Whether Technique was paid is similarly immaterial, as Technique's inspection reveals the need for roof replacement *annually* and demonstrates that the defects were discoverable upon reasonable inspection.  Furthermore, E-Poch's decision to perform a limited inspection and/or to enlist an uncompensated inspector cannot justify E-Poch's alleged ignorance of conditions that were reasonably discoverable.  *See Kramer*, 830 N.E.2d at 422, ¶22 (affirming summary judgment against plaintiffs who chose to have a relative with limited knowledge inspect a retaining wall and finding plaintiffs were not justified in relying upon the defendants' representations because the defendants did not impede the inspection and an expert inspection would have revealed the defect.)

9

that the "true condition" of the roof was neither open nor obvious is conclusory. The Court must determine in light of the facts presented if there is a genuine issue of material fact as to whether the condition of the roof was open to observation or discoverable upon reasonable inspection.

Griffith's report contains numerous accounts of roof defects that were readily observable, even in the absence of destructive core testing. For example, Griffith made the following observations without any invasive testing and illustrated the following defects with photographs: there was rust on the underside of the deck and "it can typically be assumed ... that the top side is in similar or worse condition; certain sections of the roof were in a general state of deterioration as evidenced by roof blisters, ridges, and ridges that had previously been repaired but were cracking open; stripping plies at the gutters failed; little or no maintenance was performed on Roof D4 as illustrated by the presence of a tree that appeared to be several years old; several penetrations in the southeast corner of the roof were not properly sealed; and rust on siding above the roof-line may be allowing moisture into the roof system. (Pl.'s Memo. In Opp'n, Ex. G.) Griffith also conceded during his deposition that portions of the roof were in such bad condition that the need to replace them could be ascertained without destructive core testing. (Griffith Depo. at 14-15.)

E-Poch's argument pertaining to the need for destructive testing misses the point. Even if one needed to engage in invasive and destructive testing to determine every detail of the necessary repairs or the precise amount of replacement roofing necessary, the law does not require such precision, only that the defect be observable or discoverable upon reasonable inspection. Moreover, Timmons's actual examination, conducted prior to E-Poch's purchase, revealed significant problems with the roof and the need for annual replacement of an immediate

10

and imminent nature – not just maintenance as Melvin alleged he was told by Bozich.

The Court's previous reliance on Griffith's conclusion, as provided in his affidavit, and the alleged concealment of leaks was misplaced.[6] Construing the evidence in the light most favorable to E-Poch as the non-moving party, the defects of the roof (*i.e.* the need to replace portions of the roof), were readily observable as evidenced by the testimony of both Timmons and Griffith, and no reasonable juror could find that the condition of the roof was hidden or latent.

**2. Fraud on the part of the seller**.

Even if the condition of the roof was open to observation or discoverable upon reasonable inspection, the doctrine of *caveat emptor* would not apply if TRW engaged in fraud. *See, e.g., Layman*, 519 N.E.2d at 644. In its previous order, the Court erroneously concluded that a genuine issue of material fact existed as to whether TRW engaged in fraud.

An action for fraudulent misrepresentation requires proof of (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *See Brewer v. Brothers*, 611 N.E.2d 492, 495, 82 Ohio App. 3d 148, 153 (Ohio Ct. App. 1992) *citing Burr v.*

---

[6] As discussed in the following section, the allegation that TRW consciously concealed leaks and puddles is immaterial for the purposes of summary judgment based on the actual and constructive knowledge of E-Poch that the roof leaked and needed significant repair and replacement.

11

*Stark Cty. Bd. of Comm'rs.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101, 1105 (Ohio 1986); *Noble v. Mandalin*, 660 N.E.2d 1231, 1234, 104 Ohio App. 3d 11, 14 (Ohio Ct. App. 1995); *Weiker v. A.A. Green Realty*, 2006 Ohio App. LEXIS 1704, 2006-Ohio-1860, ¶38 (Ohio Ct. App. 2006); *Barker v. Stoner*, 650 N.E.2d 1372, 1374, 70 Ohio Misc. 2d 42, 46 (Ohio Misc. 1994); *Cardi v. Gump*, 698 N.E.2d at 1022. "The elements of negligent misrepresentation are as follows: '[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" *Delman v. Cleveland Heights*, 41 Ohio St. 3d 1, 4, 534 N.E.2d 835 (Ohio 1989) (emphasis in original), *quoting* 3 Restatement of the Law 2d, Torts (1965) 126-127, § 552(1).

According to Melvin, E-Poch's principal, Thomas Bozich of TRW told him that one third of the roof had been replaced and the remainder could be maintained by an annual roofing maintenance program. (Aff. of Melvin at ¶6, attached to Pl.'s Memo. In Opp'n as Ex. A.) The Court has not found any evidence that suggests that one-third of the roof had not been replaced by new roofing. During his deposition, Melvin testified that Bozich, in response to his questions, represented that the roof was in overall good condition with only minor leaks. (Melvin Depo. at 131-132, 170.) These statements, construed in a light most favorable to E-Poch, can reasonably be construed as false and made with the intent to mislead when viewed in contrast to reports made by Roberts Roofing, an independent contractor engaged by TRW, the contents of which were not specifically related to E-Poch. (Bozich Depo., Exh. 24.)

12

However, E-Poch's fraudulent and/or negligent misrepresentation claims cannot be maintained unless it can demonstrate that it justifiably relied upon TRW's alleged misrepresentations or acts of concealment. *See, e.g.*, *Brewer*, 611 N.E.2d at 495. "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Restatement 2d of Torts, § 541. As discussed above, Timmons of Technique Roofing visually inspected the roof and reported his findings. The Technique report unequivocally indicated that "[s]ome sections have 10-15 years [of life], some 5-7, some 3-5, some 1-3, and some ... in replacement stage." (Def.'s Memo. In Support, Exh. 2.) In addition, the report further stated that approximately 50,000 square feet of a total of approximately 850,000 square feet will need to be replaced annually, and that $35,000 to $40,000 would have to be spent annually on repair alone. *Id*. Thus, the Technique report informed E-Poch of pivotal information that was at odds with E-Poch's understanding of Bozich's representations. Notably, the report indicated in no uncertain terms that the roof would require not only maintenance, but roof replacement of approximately 50,000 square feet per annum. Furthermore, the report specified that some sections were in need of immediate replacement while others sections had as little as 1-3 years of life left. *Id*.

E-Poch, despite being informed by its inspector that roof replacement would be an ongoing issue annually, did not make further inquiry of Timmons, did not engage in a more thorough investigation of the roof, did not make further inquiry of Defendant TRW, and did not inquire about the percentage or square footage that needed immediate or imminent replacement. Further, it is undisputed that E-Poch knew prior to closing that Roberts Roofing administered TRW's roof maintenance program, yet E-Poch never contacted Roberts Roofing prior to

13

closing.[7] (Melvin Depo. at 109.)  In addition, there is no evidence that E-Poch, after receiving the Technique report, asked TRW whether their maintenance program involved annual roof replacement.  *See Belluardo v. Blankenship*, 1998 Ohio App. LEXIS 2409 at *14 (Ohio Ct. App. 1998) (finding no justifiable reliance where plaintiff exercised her option to inspect the property, the inspection showed significant but inadequate repair work, and plaintiff failed to heed the inspector's advice to seek a more qualified opinion or make further inquiry.)  The *Belluardo* court found that plaintiff had been placed on notice of a possible defect necessitating further inquiry, and "[o]nce given notice of a possible defect, reasonable prudence dictated that plaintiff make further inquiry or inspection.  *Id*., *citing Tipton v. Nuzum*, 84 Ohio App. 3d 33, 39, 616 N.E.2d 265 (Ohio Ct. App. 1992); *Buchanan v. Geneva Chervenic Realty*, 115 Ohio App. 3d 250, 258, 685 N.E.2d 265 (Ohio Ct. App. 1996) (plaintiff claiming fraudulent misrepresentation when seller stated house was "pet-free" did not justifiably rely on representation where inspector found cat and litter box in basement.)

Based on this Court's more extensive review of the evidence, it is clear that E-Poch had knowledge that significant portions of the roof would need to be replaced almost immediately; and, thus, E-Poch knew or had good reason to know that any representation to the contrary was inaccurate.[8]  E-Poch could not justifiably rely on Bozich's statement that the roof was in good

---

[7] Although the Roberts Roofing reports were made available to Timmons, who testified that he briefly reviewed them, E-Poch did not make inquiry of Roberts Roofing until after it purchased the building and the spring thaw presented water leaks.

[8] In its prior decision, the Court found it significant that E-Poch presented evidence that could reasonably be construed as a conscious and deliberate attempt to conceal the roof's condition.  Specifically, there is testimony that Bozich instructed Tim Seale, a former TRW employee, to vacuum up puddles caused by leaks from the roof and to refrain from speaking to prospective purchasers regarding the condition of the roof.  (Aff. of Seale at

condition and required only maintenance when E-Poch's inspector unequivocally notified E-Poch that immediate and imminent repair was needed and that 50,000 square feet of roof should be replaced annually. *See, e.g., Findlay Ford-Lincoln-Mercury v. Huffman*, 2004 Ohio App. LEXIS 486, 2004-Ohio-541 at ¶17 (Ohio Ct. App. 2004) (Plaintiff has "no right to rely upon oral representations ... where the true facts are equally open to both parties."), *citing Traverse v. Long*, 165 Ohio St. 249, 252, 135 N.E.2d 256 (Ohio 1956). Therefore, under these circumstances, no reasonable juror could find that E-Poch justifiably relied on Bozich's alleged misrepresentations. As such, E-Poch cannot maintain its fraudulent or negligent misrepresentation claims and the application of the doctrine of *caveat emptor* is appropriate

### IV.  Conclusion

The doctrine of caveat emptor bars E-Poch's fraudulent and/or negligent misrepresentation claims because: (1) the defective condition of the roof and the need for immediate and imminent replacement of portions of the roof was open to observation and discovered upon inspection; (2) Technique, acting on behalf of E-Poch, had an unimpeded opportunity to examine the property as well TRW's roofing records; and (3) under the

---

¶¶1-9, attached to Pl.'s Memo, in Opp'n as Ex. E). There is also testimony of a security guard that she and other guards were instructed by Bozich not to talk about leaks in the roof. (Aff. of Pfeiffer at ¶19, attached to Pl.'s Memo, in Opp'n as Ex. F.) However, Timmons's inspection revealed that portions of the roof leaked, some portions required repair and others required immediate or imminent replacement. (Timmons Depo. at 11-13, 37.) Furthermore, Melvin testified to the following: Bozich informed him prior to the sale that the roof had leaks, albeit Bozich did not characterize the leaks as "big"; Melvin observed leaks and puddles on his visits prior to the sale; and he observed Seale vacuuming and scrubbing the floor with a large machine almost every time he visited the property. (Melvin Depo. at 132-134). The alleged factual dispute as to the severity of the leaks and their concealment is immaterial for summary judgment purposes, as E-Poch had knowledge that the roof leaked and required replacement or repair.

15

circumstances, E-Poch did not justifiably rely on TRW's alleged misrepresentations thereby precluding fraud.  For the foregoing reasons, TRW's Motion for Partial Reconsideration is GRANTED and summary judgment is entered in Defendant's favor on Plaintiff E-Poch's claims for fraudulent and negligent misrepresentation claims contained in Counts One through Four of the Complaint.  This matter will proceed to trial as scheduled with respect to E-Poch's remaining claim for breach of contract alleging TRW failed to pay utility charges incurred as a result of TRW's clean-up, repair, and restoration activities.

>IT IS SO ORDERED.

>>/s/ *Nancy A. Vecchiarelli*
>>U.S. MAGISTRATE JUDGE

Date: March 2, 2007